UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ANTHONY SMITH, JR., and<br>LORETTA LYNN SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 11-270-ART |
| | ) | |
| and | ) | |
| | ) | |
| CHARTIS CASUALTY COMPANY, | ) | **MEMORANDUM** |
| | ) | **OPINION & ORDER** |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOY TECHNOLOGIES, INC., d/b/a JOY<br>MINING MACHINERY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The plaintiffs, Anthony Smith, Jr., and Loretta Lynn Smith, have objected to the bill of costs filed by the defendant, Joy Technologies Inc.  R. 243.  In its bill of costs, Joy requests $9,359.75 for expenses incurred in the lawsuit.  R. 242.  Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  The rule "establishes a norm of action: prevailing parties are entitled to their costs as of course."  *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 731 (6th Cir. 1986) (internal quotation marks omitted).  Taxable costs under Rule 54(d) are limited to the costs set out in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  Section 1920 includes the following

costs: (1) "[f]ees of the clerk and marshal"; (2) "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; (5) certain docket fees; and (6) compensation for court-appointed experts, interpreters, and other interpretive services.

Courts have discretion to decline awarding costs when "it would be inequitable under all the circumstances in the case." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 836 (6th Cir. 2005) (internal quotation marks omitted). The Sixth Circuit has laid out a few situations where courts appropriately use their discretion to refuse costs: (1) where the prevailing party's costs are "unnecessary or unreasonably large"; (2) where the prevailing party has "unnecessarily prolong[ed] trial" or has "inject[ed] unmeritorious issues"; (3) where the prevailing party's victory is insignificant; and (4) in "close and difficult" cases. *White & White, Inc.*, 786 F.2d at 730. Courts must also consider the plaintiff's indigency. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989).

The plaintiffs allege that costs are inappropriate because Joy exhibited bad faith during the litigation, the case was close, the plaintiffs are indigent, and an appeal in this case is currently pending before the Sixth Circuit. R. 243-1 at 5–11, 17. The plaintiffs also specifically object to certain costs as not authorized under § 1920: costs for deposition transcripts, pro hac vice fees, removal fees, photocopying, and certain witness fees. *Id.* at 11–17. Joy is entitled to the majority of its costs, but before awarding those costs, the parties must rebrief the issue of plaintiffs' indigency.

I.      **The Defendant Did Not Exhibit Bad Faith**

The plaintiffs assert that costs are not appropriate because Joy engaged in bad-faith settlement negotiations, hired new counsel after the summary jury trial, filed motions in limine that violated the Court's scheduling order, and used the bill of costs as a threat.  R. 243-1 at 6–9.  While the Sixth Circuit has not specifically included bad faith as a relevant factor in assessing costs, the Third Circuit has looked at whether the prevailing party had "unclean hands." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 463 (3d Cir. 2000). Even assuming the Sixth Circuit would analyze the prevailing party's litigation conduct, there is no support in the record for the plaintiffs' allegations that Joy had unclean hands or exhibited bad faith.

*Settlement Negotiations.*   Joy did not engage in bad faith during settlement negotiations.  The plaintiffs insist that Joy had no intention of settling because Joy's initial settlement offer was too low.  A low settlement offer, however, does not suggest that anything untoward occurred during negotiations.   Indeed, Joy's actions are better characterized as run-of-the-mill negotiation strategy.  It is the rare negotiating tactic to offer an amount that is immediately acceptable to the other side.   Rather, it is commonplace, as the defendant, to start with an initial low offer.  In response, the plaintiff usually comes back with a high offer, and the parties sometimes meet in the middle.  That Joy thought the appropriate settlement offer should be much lower than the summary trial verdict is not unreasonable (the result of the actual jury trial demonstrates as much), but is instead the defendant's rightful negotiation position.  Moreover, while settlement is often the preferable method of dispute resolution, parties are under no obligation to settle a case.

The plaintiffs also take issue with Joy's attorney attending the settlement conference instead of another representative from Joy.  R. 243-1 at 7.  Even assuming the absence of another representative was improper, there is no case law supporting a wholesale denial of costs because the defendant's attorney appeared at the settlement conference instead of another representative.  Accordingly, the plaintiff has not demonstrated that Joy engaged in bad faith during and around the settlement conference.

*Hiring New Counsel.*  Plaintiffs' contention that the defendant's hiring of new counsel after the summary jury trial constitutes bad faith is puzzling.  R. 243-1 at 6.  As the plaintiffs themselves explain, Joy had just "lost" a $4.6 million dollar verdict at the summary jury trial.  A perfectly reasonable response by a losing party would be to hire new or additional counsel.  The defendant did exactly that, and there is nothing problematic with that action.

*Motions in Limine.*  Similarly, Joy's late filing of motions in limine and exhibits is not a sufficient reason to deny costs.  The Court addressed this issue before the trial and agreed with the plaintiffs that the motions and exhibits were filed late.  *See* R. 201.  Because of the delayed filing of exhibits, the Court allowed the plaintiffs to file supplemental exhibits and jury instructions.  *Id.* at 2.  With regard to the late motions in limine, the Court also gave the plaintiffs the option of "whether they would prefer the Court to rule on the objections at the Final Pretrial Conference or when (and if) raised by the defendant at trial."  *Id.*  Motions in limine give the parties an opportunity to address evidentiary issues before trial instead of during trial—a late filed motion in limine does not preclude the party from objecting to that issue at trial.  The plaintiffs responded that they "respectfully request that this Court rule on any pending motions in limine" at the

4

Final Pretrial Conference.  R. 204.  The plaintiffs had the chance to wait until trial to deal with the defendant's motions, and nothing would have prevented Joy from raising its objections at trial.  Instead, the plaintiffs requested rulings at the Final Pretrial Conference—many of which went their way.  Had the plaintiffs requested otherwise, the Court would have waited for the defendant to object at trial before ruling.  Because the plaintiffs had the option to avoid dealing with these issues until trial, their argument that they were "forced to expend significant time and energy to respond to unnecessary motions and other filings on the eve of trial" is without merit.  R. 243-1 at 8.  Accordingly, the defendant's late filings do not support a denial of costs.

*Horse Trading.*  Finally, Joy's alleged offer to abstain from filing a bill of costs if the plaintiffs did not appeal does not support denying costs.  The defendant has the right to file a bill of costs, just as the plaintiffs have the right to appeal.  Where both parties engaged in permissible conduct, there is no bad faith.

## II. Plaintiffs' Good Faith and Closeness of the Case Do Not Justify Denying Costs

There is no question the plaintiffs brought this case in good faith.  While good faith is "a relevant consideration in Rule 54(d) deliberations," it is not a sufficient independent ground to deny costs.  *White & White, Inc.*, 786 F.2d at 731.  Plaintiffs supplement their good-faith argument by asserting that costs are inappropriate because the case was "close and hotly contested."  R. 243-1 at 10.  While a district court may deny costs in a "close and difficult" case, it is not required to do so.  *McDonald v. Petree*, 409 F.3d 724, 732 (6th Cir. 2005).

This case was not close when one considers how the Sixth Circuit has defined that term in taxing costs.  In *White & White, Inc.*, the Sixth Circuit defined a close case "by the

difficulty of discerning the law of the case" as well as the difficulty in analyzing the evidence. 786 F.2d at 732–33. Cases that courts have considered "close" include those involving patent validity and complex antitrust issues. *Id.* For example, the antitrust trial in *White* lasted 80 days, "required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page opinion." *Id.* at 732. Thus, that district court did not abuse its discretion in factoring in the closeness of the case in denying costs. *Id.*; *see also McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 744 (6th Cir. 2002) (per curiam) (holding that district court did not abuse its discretion in finding that a trial was close where it lasted 23 days with 31 witnesses and nine expert witnesses and the jury had to "understand complex medical testimony on fractures and subluxation").

Here, the case did not reach the level of complexity involved in cases like those in patent or antitrust litigation. The main issue for trial was whether Anthony Smith's injuries were reasonably foreseeable to Joy. The trial lasted six days with fewer than twenty witnesses. The jury came back with a defense verdict in approximately two hours. The plaintiffs point to the denial of the defendant's motion for summary judgment as evidence of the case's complexity, but denial of summary judgment is not an adequate basis to deny costs. *See Hunter v. Gen. Motor Corp.*, 161 F. App'x 502, 504 (6th Cir. 2005) (per curiam) ("We conclude that the use of the summary judgment standard to deny the defendant's Rule 54 motion in this case constituted an abuse of discretion on the part of the district court."). Nor does it mean the case was "close"; rather, it simply means there was a material issue of fact for the jury to decide. The plaintiffs' case was certainly worthy of trial, but trial worthiness does not automatically make a close case. Neither the law nor the evidence was sufficiently difficult to warrant the denial of costs.

6

### III. Objections to Specific Costs

#### A.     Deposition Copies

The plaintiffs object to the costs for extra copies of certain depositions.  The Sixth Circuit has interpreted § 1920 as allowing the taxing of costs for "the expenses of taking, transcribing and reproducing depositions."  *Sales*, 873 at 120.  Taxing deposition costs is appropriate if they are "reasonably necessary for the litigation."  *Id.*   To determine necessity, courts look to the time of the deposition, and "the fact that a deposition is not actually used at trial is not controlling."  *Id.*   Here, the defendants request costs for the original transcript and copy of the depositions of Anthony Smith, Loretta Lynn Smith, Adam Hall, Kenneth Blundell, Thomas Sullivan, Benny Hensley, Belve Brown, and Ted Triplett.  R. 242-4 at 21–26.

The defendant's decision to order the original transcripts plus one copy was not unreasonable.  The Sixth Circuit has specifically allowed taxation for the "reproducing of depositions."   *Sales*, 873 F.2d at 120.   Having both the original and a copy of the deposition is reasonably necessary because a party may use the unmarked original for use at trial, such as for impeachment, while using the copy to mark up or take notes.  Additionally, it is generally standard practice in Kentucky for court reporters to charge for an original and a copy of the deposition transcript.  Other courts have agreed that a copy of a deposition is reasonably necessary for trial.  *See  Fogleman v. Arabian Am. Oil Co.*, 920 F.2d 278, 285 (5th Cir. 1991); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990); *Cunningham v. Target Corp.*, No. 3:06-CV-160, 2010 WL 1032772, at *2 (W.D. Ky. Mar. 17, 2010).  *But see United States v. MPM Fin. Grp., Inc.*, No. Civ.A. 04-20-JBT, 2005 WL 3021944, at *3 (E.D. Ky. Oct. 3, 2005) (holding extra copy

of deposition was unnecessary). The plaintiffs have not shown why one extra copy would be unnecessary. At the time Joy took the depositions, it was reasonable to believe that an original, clean transcript (for impeachment) and a copy (for notes) would be necessary.

The plaintiffs also contend that the Court should exclude the transcript and video costs for the depositions of Ann Neulicht and Laura Lampton. R. 243-1 at 13–14. The Sixth Circuit has approved the taxation of videotape depositions under § 1920. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) (citing *Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1477 (10th Cir. 1997)), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997 (2012); *see also Ibrahim v. Food Lion, Inc.*, 149 F.3d 1183, at *2 (6th Cir. 1998) ("Section 1920 includes as a taxable expense the cost of videotaping a deposition.") (unpublished). Because Joy seeks to tax costs related only to Neulicht, not Lampton, the Court will consider plaintiffs' objections as to Neulicht. *See* R. 242-1.

According to the plaintiffs, the costs for the video deposition of Neulicht may not be taxed because the deposition was used at trial. Their sole rationale is that the costs of expert witnesses are not a taxable cost under § 1920, relying on *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 739–40 (6th Cir. 2007). *L & W*, however, dealt with fees, not deposition costs. *See id.* (reiterating that "Supreme Court cases . . . have held that expert witness *fees* are not recoverable as costs absent explicit statutory authority" (emphasis added)). Expert witness fees are paid by a party to the expert, such as "the hourly rate charged for the expert's time and services." *Id.* at 741. That is different than the expenses for ordering video depositions and transcripts, which are not paid to the expert but rather to a court reporter or other service. The plaintiffs do not direct the Court to any

8

case holding that the costs of depositions for experts are treated differently than costs for depositions for non-expert witnesses, which are taxable.  Because deposition fees are a taxable cost under § 1920, the costs for the video deposition of Neulicht are taxable.

Similarly, the paper deposition transcript of Neulicht is taxable.  The Sixth Circuit has allowed the taxing of costs for both the video deposition and corresponding paper transcripts.  *BDT Prods., Inc.*, 405 F.3d at 420.  Just as with the copy of the depositions above, having a paper copy of the deposition is reasonably necessary for trial.  The paper copy aids counsel in preparation for trial, and, unlike a video, can easily be used for reference.  As a result, the costs of the paper copy of the Neulicht deposition are taxable.

## B.     Pro Hac Vice and Removal Fees

The plaintiffs also object to the taxation of pro hac vice fees and removal fees.  R. 243-1 at 11–12.  Pro hac vice fees are not taxable, but removal fees are.

Courts are split on whether a court may appropriately tax pro hac vice fees to the non-prevailing party.  *Compare Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 741 F.3d 955, 957–58 (9th Cir. 2013) (per curiam) (not taxing pro hac vice fees), *with Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 896 (8th Cir. 2009) (taxing pro hac vice fees).  The Sixth Circuit has not clarified whether pro hac vice fees are an appropriate taxable cost under §1920.

Because courts' authority to tax costs is circumscribed by § 1920, the power to tax pro hac vice fees must emanate from that provision.  Section 1920, however, does not specifically authorize courts to tax costs for pro hac vice fees.  *Kalitta*, 741 F.3d at 957; *Eagle Ins. Co. v. Johnson*, 982 F.Supp. 1456, 1459–60 (M.D. Ala. 1997).  Joy relies on § 1920(1), which permits the district court to tax the "[f]ees of the clerk and marshal."

9

The fees of the clerk and marshal are delineated in 28 U.S.C. § 1914.  Section 1914 includes a $350 filing fee and "such additional fees only as are prescribed by the Judicial Conference of the United States."  28 U.S.C. § 1914.  The fees prescribed by the Judicial Conference do not mention pro hac vice fees.  *See Kalitta*, 741 F.3d at 958 ("[T]he Judicial Conference has not specifically provided for *pro hac vice* fees.").  Instead, the Judicial Conference has permitted clerks to charge "for full and permanent, not just temporary, admission to the bar of the court."  *Eagle Ins. Co.*, 982 F.Supp. at 1459; *see also* Judicial Conference of the United States, District Court Miscellaneous Fee Schedule, http://www.uscourts.gov/FormsAndFees/Fees/DistrictCourtMiscellaneousFeeSchedule.as px (Dec. 1, 2014) (charging $176 for "original admission of attorneys to practice").  Because § 1920, § 1914, and the fees from the Judicial Conference do not include pro hac vice fees, the Court does not have the power to tax those costs.  Accordingly, $95.00 in pro hac vice fees is not taxable.

Unlike pro hac vice fees, removal fees do fall within § 1920(1) and § 1914.  Under § 1914, the Clerk of the Court must "require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350."  28  U.S.C. § 1914.  Here, the defendant paid the filing fee when it removed the case.  *See* R. 1.  The plaintiffs contend that the removal fees are not necessary because Kentucky courts were capable of adjudicating the dispute.  While Kentucky courts could have dealt with this case, the removal filing fee was necessary for this lawsuit in federal court.  Under the plaintiffs' logic, no costs would be necessary in a diversity case because the state court could always have adjudicated the case.  That result would drastically penalize parties for invoking their statutory right to removal.  Even

though the removal fees are taxable, only $350, not $400 as requested by the defendant, may be taxed against the plaintiffs.  The Clerk of the Court charged the defendant only $350, *see* R. 1, and § 1914 authorizes a filing fee of $350.   The confusion is understandable:  as of May 13, 2013, the Clerk of the Court now charges an additional administrative fee of $50, which effectively makes the filing fee $400.  Notice of Increase of Filing Fees, Office of the Clerk for the United States District Court for the Eastern District                of                Kentucky,                *available*                *at* http://www.kyed.uscourts.gov/kyed_pdfs/Notice_Fee_Increase.pdf.  The only taxable cost for removal, however, is the $350 filing fee provided by § 1914.

### C.   Photocopying Expenses

The plaintiffs also object to various photocopying expenses.  First, the plaintiffs argue that the expenses for enlarging certain copies for use as demonstrative exhibits were unnecessary.  R. 243-1 at 14.  Joy seeks to tax costs for "large color copies" as well as the "enlargement" of those copies.  R. 242-4 at 29.  According to the plaintiffs, the oversize copies were not necessary because of the availability of other multimedia options available.  R. 243-1 at 14.  Second, the plaintiffs contend that the Court should not tax photocopying expenses for trial exhibits because Joy has not adequately described those costs.  *Id.* at 15.

The enlarged copies for demonstrative exhibits were not reasonably necessary for trial.  Section 1920(4) allows the taxation of "costs of making copies of any materials where the copies are *necessarily* obtained for use in the case."  28 U.S.C. § 1920(4) (emphasis added).  The courtroom was equipped with multimedia technology allowing the parties to show exhibits and documents to the jurors on individual screens.  Joy was

capable of using the technology, as it took advantage of the various multimedia options throughout the trial.  The enlarged demonstrative aides, while perhaps convenient for the defendant, were not reasonably necessary in light of the available technology in the courtroom.   Accordingly, Joy cannot recover $712.62 in costs for the enlarged demonstrative aides.

Second, the plaintiffs contend that the Court should not tax photocopying costs because Joy has not clearly enumerated $852.65 in photocopying expenses.  Courts may tax photocopying expenses if they are "necessarily obtained for use in the case."  *King v. Gowdy*, 268 F. App'x 389, 391 (6th Cir. 2008) (quoting 28 U.S.C. § 1920(4)).  The Sixth Circuit has instructed that district courts should not be a "simple rubber stamp" for photocopying expenses.  *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1151 (6th Cir. 1998).  Instead, "the district court should cast a strict eye toward counsel's expense submissions."  *Id.* at 1152.  Here, the receipts do not describe what the defendant photocopied.  *See* R. 242-5 at 16–28.  Rather, the receipts simply list the amount of pages copied, the price per page, and a cursory description that states either "Reproductions" or "Color Reproductions."  *Id.*  Joy does not attempt to clarify the necessity of those costs in its brief.  Without any explanation of the photocopying expenses, Joy does not demonstrate how the copies were reasonably necessary for trial.  As a result, Joy cannot recover the $852.65 in photocopying expenses.

### D.   Witness Fees

Joy requests costs for travel and witness fees for Adam Hall, Belve Brown, Jr., Benny C. Hensley, Teddy Triplett, and Timothy Fugate.  R. 242-1 at 4–5.  Joy also includes costs for subpoenas and service fees for those witnesses.  *Id.*  Witness fees are

taxable.  *See L & W Supply Corp.*, 475 F.3d at 738.  The prevailing party may also recover the costs for subpoenas.  *See Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002) (per curiam).[1]

Brown did not testify at trial for either the defendant or the plaintiffs, and the plaintiffs called the remaining witnesses.  The plaintiffs contend that the Court should not tax costs for witness fees, including subpoena fees, for witnesses that did not testify for the defendant.  The plaintiffs do not specifically say which witnesses' costs they oppose, contending only that the Court should not tax the "2014 costs."  R. 243-1 at 16.  All the witness fees, except Brown's fees, were necessary.  The plaintiffs only oppose Brown's 2014 costs (not his 2013 costs for some reason), so the 2014 costs are not taxable.

The witnesses, with the exception of Brown, testified at trial, even though they were called by the plaintiffs.  The plaintiffs do not cite to any cases holding that a court may not tax costs where the non-prevailing party called the witness at trial.  Simply because the witnesses testified for the plaintiffs, who had the first opportunity to call witnesses, does not mean that the testimony was not reasonably necessary for the defendants as well.  The witnesses were necessary to Joy's case because they were critical in demonstrating that those individuals, or Southern Coal, might be responsible for the injuries to Anthony Smith.

The costs for Brown, including the subpoena costs, are not taxable because he did not testify at trial.  There is generally a presumption that "no fee may be taxed for

---

[1] The *Arrambide* court explained that private-process-server fees were recoverable "to the extent that these private process server fees do not exceed the United States Marshal's fees."  33 F. App'x at 203.  The plaintiffs do not object to the subpoena costs as exceeding the Marshal's fees, which are $65 per hour.  *See* 28 C.F.R. § 0.114.  Their only objection is that the witnesses were unnecessary for trial.  R. 243-1 at 16.

someone who comes to the courthouse but does not testify at the trial." Charles Alan Wright & Arthur R. Miller, 10 Federal Practice and Procedure § 2678 (3d ed.). The defendant offers no reason to depart from that presumption. While the Sixth Circuit, in *Paschal v. Flagstar Bank*, 297 F.3d 431, 438 (6th Cir. 2002), permitted the taxation of costs even where the witness had not testified, that case is distinguishable. In *Paschal*, the plaintiffs intended to call an expert witness, but did not call the expert when the court ruled that the defendant's expert could not testify. *Id.* The Sixth Circuit concluded that the district court did not abuse its discretion in awarding costs to the plaintiffs for expert witness fees because their witness would have testified absent the district court's ruling. *Id.* There is no analogous situation here. No ruling from the Court made Brown's testimony unnecessary. Additionally, *Paschal* did not hold that a district court must tax costs where the witness did not testify; instead *Paschal* left the decision to the court's discretion. Accordingly, the $256.96 in fees related to Brown is not taxable.

According to the plaintiffs, the Court should deny Brown's travel costs because Brown and Hensley traveled together. *See* R. 243-1 at 16. Even though the plaintiffs provide no evidence that Brown and Hensley actually traveled together apart from one statement in their brief, Joy has not responded to the allegation. The Court need not decide whether Joy waived its response. Because the costs associated with Brown are not taxable, there is no concern of double taxation of travel costs. Indeed, the fact that Brown may have traveled with Hensley provides further support for disallowing the taxation of costs as to Brown.

### E.     Intervenor-Plaintiff

The plaintiffs also contend that the Court should tax costs against the intervenor-plaintiff, Chartis Casualty.  Chartis has not responded.  The defendant requested costs only from the plaintiffs, not from Chartis.  *See* R. 242.  Where there are multiple non-prevailing parties, courts presume that each non-prevailing party is jointly and severally liable, "unless it is clear that one or more of the losing parties is responsible for a disproportionate share of the costs."  *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) (collecting cases); *see also Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 569 F.3d 1353, 1357 (Fed. Cir. 2009).  Courts have discretion to apportion costs between the parties.  *See In re Paoli*, 221 F.3d at 469 ("The general rule in this circuit and others is that a district court, in exercising its equitable discretion, may apportion costs between the prevailing and non-prevailing parties as it sees fit.").  However, the burden is "on the losing parties to introduce evidence and persuade the court that costs should be apportioned," otherwise the default rule of joint and several liability applies.  *Id.*  The plaintiffs have not met their burden.   They have not offered any reason why the Court should apportion costs to Chartis.  Rather, the plaintiffs cite cases that hold that courts *may* tax costs to an intervening plaintiff.  But the law requires the plaintiffs to do more than inform the Court of its discretionary authority.  They must show why the default rule of joint and several liability is inapplicable here.  Because they make no attempt to persuade the Court to depart from the default rule, it is not appropriate to apportion costs to Chartis.  If appropriate, the plaintiffs may seek contribution from Chartis for its share of costs.

F.     **Pending Appeal**

Taxing costs is appropriate even though an appeal in this case is pending.  *See* R. 241; R. 244; *Banks v. Bosch Rexroth Corp.*, No. 5:12-345-DCR, 2014 WL 4384463, at *3 (E.D. Ky. Sept. 3, 2014) ("It is more efficient to address the issue of costs at this time than to await a final ruling from the Sixth Circuit regarding [the] pending appeal on the merits of the case.").  *But see Pedreira v. Ky. Baptist Homes for Children, Inc.*, No. 3:00-CV-00210, 2012 WL 1038111, at *6 (W.D. Ky. Mar. 27, 2012) (refusing to determine costs where "final judgment has been reversed and one of the plaintiffs' claims reinstated" on appeal).  In this case, ruling on the motion for costs serves judicial economy.  By receiving a ruling on the motion now, the plaintiffs may "consolidate any potential appeal regarding costs with [their] appeal on the merits."  *Banks*, 2014 WL 4384463 at *3.

## IV. Plaintiffs' Indigency Requires Further Briefing

The briefing from the parties is not sufficient to determine whether the plaintiffs' indigency should prevent taxation of costs.  District courts must determine whether a plaintiff claiming indigency has the "capacity to pay the costs assessed."  *Sales*, 873 F.2d at 120; *see also In re Ruben*, 825 F.2d 977, 987 (6th Cir. 1987) ("[D]istrict judges are encouraged to consider the question of indigency fully for the record.").  While indigency is a relevant factor, it is not "an automatic basis for denying taxation of costs against an unsuccessful litigant."  *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001).  Joy requests $9,359.75 in costs.  As discussed above, certain costs are not taxable, which results in a total of $7,392.52 in costs.

Plaintiff Anthony Smith currently receives $691.85 per week in disability benefits, which totals $35,976.20 per year.  R. 243-1 at 9 (citing Exhibit A).  Plaintiff Loretta Lynn

Smith does not have a job.  *Id.*  The plaintiffs have four children, three who are under 18 years old and still live with the plaintiffs.  *Id.*  The plaintiffs do not explain what expenses they have or if they have any other assets.  Without such information, the Court cannot accurately determine plaintiffs' indigency.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) ("If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay.");  *cf. Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012) (allowing taxation of $55,401.63 in costs where party earned $75,000 per year and had approximately $3,190 in monthly expenses).  The Court will order the plaintiffs to rebrief the issue of indigency.  The plaintiffs must explain, in a new brief and with an attached affidavit, what monthly expenses they incur, their assets, and any other relevant information.

## CONCLUSION

The following costs are not taxable:  $95.00 in pro hac vice fees, $50 in removal fees, $256.96 in witness fees related to Belve Brown, and $1,565.27 in photocopying expenses.  The total of denied costs equals $1,967.23.  Subtracting that amount from Joy's requested costs of $9,359.75 equals $7,392.52.  Because the plaintiffs' briefing did not adequately discuss the plaintiffs' indigency, the parties must rebrief that issue.

Accordingly, it is **ORDERED** that:

(1)   By **Monday, February 16, 2015**, the plaintiffs **SHALL FILE** a brief on the plaintiffs' indigency.

(2)   The plaintiffs' brief shall include an affidavit and must discuss the plaintiffs' expenses, assets, and other relevant information.

(3)     By **Monday, March 2, 2015,** the defendant **SHALL RESPOND**.

(4)     By **Monday, March 9, 2015**, the plaintiffs **MAY REPLY**.

This the 2nd day of February, 2015.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**